**JOHN C. LEMON**
California Bar No. 175847
**LAW OFFICES OF JOHN C. LEMON, APC**
1350 Columbia Street, Suite 600
San Diego, California  92101
(619) 794-0423
john@jcl-lawoffice.com

Attorney for Mr. Maloney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE DANA M. SABRAW)**

| UNITED STATES OF AMERICA, | Criminal No. 10cr2803-DMS |
|---|---|
| Plaintiff, | Date:  June 28, 2013<br>Time:  11:00 a.m. |
| v. | |
| **JOHN MALONEY,** | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION** |
| Defendant. | |

## I.

## PERTINENT FACTS

On June 17, 2010, Mr. Maloney was arrested at the Highway 78 Border Patrol checkpoint driving a semi-tractor in which 146 kilograms of marijuana were discovered. On July 14, 2010, the grand jury returned an indictment alleging possession of marijuana with intent to distribute. CR 10.[2] On July 29, 2010, Mr. Maloney posted a signature bond and was released from custody. CR 15. He remained free on bond until April 20, 2011, when he was remanded after a jury returned a guilty verdict. CR 57-58.

On August 5, 2011, this Court sentenced Mr. Maloney to 63 months in custody. CR 75-76. Mr. Maloney appealed his conviction, arguing, *inter alia,* that the Court erred in denying his requests for: 1) surrebuttal after the prosecutor sandbagged him by

---

[2] "CR" refers to the Clerk's Record in the district court; "11-50311 CR" refers to the Clerk's Record in the Court of Appeals.

withholding three completely new arguments for rebuttal closing; and 2) a jury instruction explaining the unique relationship between character evidence and the government's burden of proof beyond a reasonable doubt.

On November 14, 2012, a divided three-judge panel of the Ninth Circuit issued an opinion affirming Mr. Maloney's conviction. *United States v. Maloney,* 699 F.3d 1130 (9th Cir. 2012). The Honorable Ronald Lee Gilman, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation, dissented. Although Judge Gilman agreed with the majority's analysis regarding the other issues raised by Mr. Maloney, he believed that the denial of surrebuttal where the government made an argument that was "based on *absolutely no record evidence,*" was an error that required a new trial. *See id.* at 1151 (Gilman, J., dissenting) (emphasis in original).

Mr. Maloney petitioned for rehearing en banc, which the Ninth Circuit granted by order dated May 30, 2013. 11-50311 CR 37. The order stated that the "three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit." *Id.* The court furthered order that "en banc oral argument will take place during the week of September 16, 2013, in San Francisco." 11-50311 CR 38.

Mr. Maloney remains in the custody of the Bureau of Prisons with an actual or projected release date of October 4, 2015. Depending upon whether Mr. Maloney gets into the 500-Hour RDAP program or receives an RRC placement, this release date could be advanced.

If Mr. Maloney prevails before the en banc court, he will likely receive a new trial; the en banc court will probably require another 6-18 months to render its opinion, however, by which time Mr. Maloney will have served all, or almost all, of his sentence. Mr. Maloney is clearly not a flight risk, his appeal "raises a substantial question of law or fact likely to result in (i) reversal [or] (ii) an order for a new trial," and "there are exceptional reasons why [his] detention [is] not [] appropriate." 18 U.S.C. §§ 3143(b); 3145(c). He accordingly moves for bail pending the opinion of the en banc court.

## II.

## THE COURT SHOULD REINSTATE MR. MALONEY'S BAIL BOND PENDING THE OUTCOME OF THE EN BANC PROCEEDINGS

**A.   This Court has retained jurisdiction over Mr. Maloney's bail status.**

As an initial matter, this Court still has jurisdiction over Mr. Maloney's bail status. Although the filing of a notice of appeal transfers jurisdiction to the Court of Appeals, "[t]he [district] court retains jurisdiction over the person of the defendant at least for the limited purposes of reviewing, altering or amending the conditions under which that court released the defendant . . . ." *United States v. Krzyske,* 857 F.2d 1089, 1091 (6th Cir. 1988); *accord United States v. Sullivan,* 631 F.Supp. 1539 (E.D. Pa. 1986). Mr. Maloney accordingly brings this motion before this Court, rather than in the Court of Appeals.

**B.   The Court should reinstate Mr. Maloney's bail bond because he has satisfied the requirements for bail pending appeal.**

*1.   The standard for bail pending appeal under 18 U.S.C. §§ 3143(b) and 3145(c).*

18 U.S.C. § 3143(b) sets forth the standard for release or detention pending appeal by a criminal defendant. Under that section, the Court should detain a defendant who has been found guilty and sentenced, unless the Court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community . . . .; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
>
>    (i) reversal, [or]
>
>    (ii) an order for a new trial . . . .

18 U.S.C. § 3143(b)(1). If a defendant has been convicted of a specified offense, however – including a narcotics offense with a statutory maximum sentence greater than ten years, as Mr. Maloney has been – section 3143(b) nonetheless requires detention. 18 U.S.C. § 3143(b)(2). But this detention, in turn, is subject to an exception where "it is clearly shown that there are exceptional reasons why such person's detention would not

be appropriate." 18 U.S.C. § 3145(c). In order to qualify for the exception under section 3145(c), a defendant detained under section 3143(b)(2) must first demonstrate that he would otherwise qualify for bail under section 3143(b)(1). *See* 18 U.S.C. § 3145(c). Mr. Maloney accordingly begins his analysis with the two-pronged test of section 3143(b)(1).

> *2.   Mr. Maloney has demonstrated by clear and convincing evidence that he is neither a flight risk nor a danger to the community.*

Mr. Maloney must first demonstrate that he is not a risk of flight and that he does not pose a danger to the community. 18 U.S.C. § 3143(b)(1)(A). He easily satisfies this requirement.

Mr. Maloney has no prior record whatsoever and, for nine months before being remanded after the guilty verdict, he performed impeccably on pretrial release. *See* PSR at 4, 8. Significantly, Mr. Maloney returned to court for the reading of the verdict after undersigned counsel had advised him that it would likely be a guilty verdict and that he would likely be remanded. *See* 4-20-11 RT at 363-64.[3]

A life-long resident of Southern California, Mr. Maloney and his wife, Gloria, have lived together in the same house in Alhambra for the last eight years. PSR at 2. According to Gloria, Mr. Maloney's extended family has resided in the Los Angeles area for over 60 years. Although his father is deceased, his mother and four siblings continue to reside in California. PSR at 2. Furthermore, Mr. Maloney had *three* witnesses make the trip from Alhambra – without being subpoenaed – to testify as to his good character. This is plainly someone with extensive ties to the community who does not present a risk of flight. Moreover, as of this writing, he now has roughly 26 months of actual time served, which ameliorates the usual concern that a lengthy mandatory-minimum sentence provides a defendant with an incentive to flee.

Finally, neither the government nor Pretrial Services has ever expressed a concern that Mr. Maloney presents a danger to the community. In short, Mr. Maloney has easily

---

[3]   "RT" refers to the Reporter's Transcript.

carried his burden of demonstrating by clear and convincing evidence that he is neither a flight risk nor a danger.

       3.    *Mr. Maloney's appeal is not for the purpose of delay and raises a substantial question of law likely to result in reversal or a new trial.*

As an initial matter, Mr. Maloney does *not* need to demonstrate that it is more likely than not that he will win a new trial to satisfy section 3143(b)(1)(B).  Rather, the term "'substantial' defines the *level of merit* required in the question presented [while] 'likely to result in reversal or an order for a new trial' defines the *type of question* that must be presented." *United States v. Handy,* 761 F.2d 1279, 1280 (9th Cir. 1985) (emphasis in original).  In other words, Mr. Maloney need only demonstrate that: 1) the issue he has raised on appeal is "substantial"; and 2) the issue raised, if resolved in his favor, will likely result in reversal.  Both elements are satisfied here.

First, a "'substantial question' is one that is 'fairly debatable' or 'fairly doubtful.'  In short, a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous.'" *Id.* 761 F.2d 1282 (internal quotations and citations omitted).  This question is plainly answered in the affirmative after the Ninth Circuit's order for rehearing en banc.  A majority of the nonrecused, active judges of the Ninth Circuit have voted to rehear this case; the issues presented are undeniably "substantial."

Second, the *type of question* presented is likely to result in reversal or a new trial.  Again, at least one of the issues before the en banc court is that the prosecutor committed misconduct and that Mr. Maloney did not get a fair trial.  If Mr. Maloney prevails, he will obviously get a new trial, unless the court concludes that the misconduct was harmless, which is unlikely.

Indeed, at oral argument, government counsel conceded that he deliberately sandbagged the defense by withholding discrete arguments for rebuttal in order to prevent undersigned counsel from being able to respond.  While the two-judge majority opinion viewed this overt gamesmanship as harmless, Judge Gilman disagreed, noting in dissent that a "a new trial is warranted if 'it is more probable than not that the prosecutor's

conduct materially affected the fairness of the trial,'" and that, "[w]hen a case comes 'down to a battle over credibility,' improper arguments are more likely to have an effect on the fundamental fairness of the trial." *Maloney,* 699 F.3d 1130, 1152 (Gilman, J., dissenting) (citations omitted).  Furthermore, Judge Gilman concluded that the focus of the rebuttal summation was the improper argument, which the jury was plainly fixated on:

> The prosecutor thought enough of the lack-of-luggage argument to save it for "sandbagging" on rebuttal summation, with the argument being not just a passing reference but a central feature.  And the jury was sufficiently interested in the argument to request information regarding the items in Maloney's possession at the time of his arrest – and concerned enough about the proper outcome of the case to spend a relatively long time deliberating.  I would therefore vacate the district court's judgment and remand for a new trial.

*Id.* at 1153.  In short, while it is possible that the en banc court might find error but nonetheless deem it harmless, such a result is unlikely; if the court finds that the prosecutor's rebuttal was improper, Mr. Maloney will probably get a new trial.

    *4. There are exceptional reasons warranting reinstatement of Mr. Maloney's bail bond under 18 U.S.C. § 3145(c).*

   Mr. Maloney thus satisfies the requirements of section 3143(b)(1) for release pending appeal.  The Court must nonetheless order him detained because he has been convicted of "an offense in a case described in subparagraph . . . (C) of subsection (f)(1) of section 3142," a controlled substance offense with a statutory maximum penalty that is greater than 10 years' imprisonment.  18 U.S.C. § 3143(b)(2).  Notwithstanding section 3143(b)(2), however, this Court should order Mr. Maloney's release "if it is clearly shown that there are exceptional reasons why [his] detention would not be appropriate."  18 U.S.C. § 3145(c).

   In *United States v. Garcia,* the Ninth Circuit addressed "the meaning of the term 'exceptional reasons.'" 340 F.3d 1013, 1014 (9th Cir. 2003).  The *Garcia* court, while offering "some guidance," "place[d] no limit on the range of matters the district court may consider." *Id.* at 1018-19.  Instead, the court encouraged district courts to "examine the totality of the circumstances and . . . determine whether . . . it would be unreasonable to

incarcerate the defendant prior to the appellate court's resolution of his appeal." *Id.* at 1019.

The court then considered some factors that "alone or in combination with others may qualify under the statute." *Id.* The first factor identified in *Garcia* is that the offense conduct was aberrational:

> [I]f the district court finds that the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society significantly if allowed to remain free on bail, these factors would militate in favor of finding exceptional reasons.

*Id.* Here, there is no question that Mr. Maloney – 55 years old at the time of sentencing – has absolutely no prior criminal history, not even a traffic ticket. PSR at 6. The offense conduct was thus aberrational and weighs in favor of ordering Mr. Maloney's release.

Second, "[t]he nature of the [] act itself may also be significant. . . . Various factors may lead the district court to believe that the particular act committed by the defendant, while falling within one of [the enumerated] categories, is sufficiently dissimilar from the others in that category to warrant a finding of 'exceptional reasons.'" *Garcia,* 340 F.3d at 1019. It accordingly bears repeating that this is a marijuana case – not a crime of violence or a more serious drug case. Particularly in this era, when several states have recently either decriminalized or legalized marijuana, this factor also militates toward reinstating the bond.

A third factor identified by the *Garcia* court that weighs in favor of release is the relatively short (63-month) sentence imposed, for three reasons:

> First, the length of the sentence may be a proxy for the seriousness of the crime. Second, the primary purpose of the Mandatory Detention Act – to incapacitate violent people – is only weakly implicated where the sentence is very short, because regardless of whether the defendant is released pending appeal, he will soon be free. Third, in such circumstance, the defendant could be forced to serve most or all of his sentence before his appeal has been decided.

*Id.* Here, Mr. Maloney's 63-month sentence is relatively short, he has already served almost half of it and will be free in just over two years, and he will almost certainly have served "most or all of his sentence before his appeal has been decided" if he is not

released.  Furthermore, there is simply no need to incapacitate Mr. Maloney under the Mandatory Detention Act.

A fourth *Garcia* factor weighing in favor of reinstating Mr. Maloney's bond is "circumstances that would render the hardships of prison unusually harsh for a particular defendant." *Id.*  As discussed in great detail at Mr. Maloney's sentencing, his wife, Gloria, suffers from HIV/AIDS and relies upon Mr. Maloney and their son, John, as her primary caretakers.  *See* CR 64 at 2.  Indeed, this Court awarded a two-level downward departure on this basis.  *See* 8/5/11 RT at 4.

Fifth – and of particular significance in this case – "[t]he nature of the defendant's arguments on appeal may also be considered by the district court in determining whether exceptional reasons exist.  When there appears to be an unusually strong chance that the defendant will succeed in obtaining a reversal of his conviction on appeal he may be able to demonstrate exceptional reasons for delaying the commencement of his sentence." *Garcia,* 340 F.3d at 1020.  Moreover, "[i]f one or more issues raised on appeal has not previously been decided by the court to which the petitioner will appeal, that may, in at least some cases, also weigh in favor of finding exceptional reasons . . . ." *Id.* at 1020-21.  As discussed above, Mr. Maloney has obviously raised at least one substantial issue "not previously decided by the court," and the fact that the court has granted en banc rehearing after a two-to-one decision against him suggests that "there appears to be an unusually strong chance that [he] will succeed in obtaining a reversal."

Finally, the fact that Mr. Maloney is "*exceptionally* unlikely to flee or to constitute a danger to the community," also militates toward release.  *Id.* at 1021 (emphasis in original).  Again, there is no suggestion whatsoever that Mr. Maloney is dangerous and his lifelong residence in the Los Angeles area, as well as the fact that he has already served almost half of his sentence, make it "exceptionally unlikely" that he will flee.

## III.
## CONCLUSION

Mr. Maloney is not a flight risk or a danger, his appeal presents a substantial question likely to result in reversal, and there are numerous exceptional reasons warranting his release pending the outcome of the en banc proceedings. He respectfully requests that the Court reinstate his bail bond.

Respectfully submitted,

Dated: June 14, 2013
/s/ John C. Lemon
**JOHN C. LEMON**
Attorney for Mr. Maloney